IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL MANZI,

        Plaintiff,

v.

LATOYA HUGHES, CHAD JENNINGS,
DR. YUAN, C/O ALSPACH, N.P. HOKE,
MS. GAY, MS. HELREGEL, MS.
KENNEDY, JANE DOE, and WEXFORD
HEALTH SOURCES, INC.,

        Defendants.

Case No. 25-cv-1623-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Michael Manzi, an inmate of the Illinois Department of Corrections who is currently incarcerated at Robinson Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Manzi's Complaint (Doc. 1) alleging deliberate indifference to his mental health needs was dismissed without prejudice for failure to state a claim (Doc. 14). Manzi was granted leave to file an amended pleading. In his Amended Complaint (Doc. 15), Manzi alleges he was denied access to a specific medication for his mental health, in violation of the Eighth Amendment. He also alleges that a correctional officer failed to protect him from an inmate assault, also in violation of the Eighth Amendment.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a

1

complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Amended Complaint

Manzi alleges that he suffers from bipolar disorder (Doc. 15, p. 9). Prior to his transfer to Robinson Correctional Center, he was prescribed Seroquel for his mental health (*Id*. at p. 5). He received the medication for three years. At some point in either 2023 or 2024, he was transferred to Lincoln Correctional Center and continued to receive his Seroquel from his tele psychiatrist Dr. Yuan (*Id*.). Later, Dr. Yuan changed his prescription to Zyprexa (*Id*.). Shortly after starting the new medication, he met with Dr. Yuan who encouraged him to try Zyprexa for his condition (*Id*. at p. 6). Manzi refused because he had previously tried different medication combinations in the past and his previous psychiatrist determined Seroquel and Klonopin were the best for Manzi because the combination kept him stable for several years (*Id*.).

Manzi questioned Dr. Yuan as to why he wanted to change his medication. Manzi acknowledges that Klonopin is considered a narcotic that he could not access in prison but did not understand the reasoning behind stopping his Seroquel. Dr. Yuan had no answer to the question. Instead, he prescribed Remeron, to help Manzi sleep, and Zyprexa (Doc. 15, p. 6). Manzi alleges that the combination of drugs ruined his mental health, and he was in and out of segregation as a result of his deteriorating behavior (*Id*.).

Manzi alleges that he was paroled in March 2024 with his prescription for Remeron and Zyprexa (Doc. 15, p. 6).[1] As a result of the change in his mood, he relapsed on drugs and alcohol (*Id.*). He eventually ended up in the hospital and received Seroquel and Klonopin (*Id.* at p. 7). But Manzi alleges that he tested positive on his next drug test, and his parole was revoked (*Id.*).

He arrived at Robinson in May 2024 (Doc. 15, p. 7). He did not receive a psych evaluation and had to submit numerous requests to be seen for his mental health. He saw nurse practitioner Hoke who gave him a list of psychiatric meds that he could try for his condition (*Id.*). He has tried three different drugs and suffered side effects with all of the medications (*Id.*). Manzi alleges that he is currently prescribed Remeron and suffering from side effects including weight gain (*Id.*). Manzi alleges that he begged Nurse Practitioner Hoke, Ms. Gay, Ms. Helregel, Ms. Kennedy, and ADA Coordinator Mr. Musgrave for help, but no one would help him (*Id.*). He also begged Warden Jennings for help (*Id.*). Manzi notes that Ms. Kennedy understood his problems but could only offer him group meetings (*Id.* at p. 9). She later quit, and Manzi believes that there is no one else who can help him (*Id.*). He alleges that he is very manic due to not being able to have the only drug that he alleges adequately treats his bipolar disorder (*Id.*).

Manzi alleges that he is getting worse because of his current medication and has been assaulted by an inmate (*Id.* at pp. 7-8). He alleges that on March 4, 2025, his nose was broken by Inmate Humphries while the correctional officer on duty, officer Alspach, ran around the

---

[1] Manzi alleges that he was paroled in March 2025, but his IDOC records indicate he was paroled in 2024. *See* IDOC Inmate Search, https://idoc.illinois.gov/offender/inmatesearch.html (last visited Mar. 24, 2026).

dayroom because he did not know what he was doing and was scared (*Id*. at p. 8). Manzi alleges that Alspach failed to intervene because he did not have adequate back-up due to the lack of staffing at the prison. Alspach did not approach Manzi until after the assault and found him bleeding on the floor of his cell (*Id*.). Manzi alleges that Inmate Humphries was transferred to another prison but there are several inmates who want to attack him because he has now been labeled a snitch (*Id*.). Manzi alleges that he wrote Latoya Hughes and the governor about the threats (*Id*. at pp. 8-9). He also told the warden about the threats (*Id*. at p. 8).

### Preliminary Dismissals

Although Manzi identifies a Jane Doe as a defendant in the case caption, he fails to include any allegations against this unknown individual in the statement of claim. Thus, any claim against Jane Doe is **DISMISSED without prejudice**.

Manzi also identifies Wexford Health Sources, Inc. as a defendant in the case caption but fails to include any allegations against the company in his statement of claim. A corporation such as Wexford can only be liable if it had a policy or practice that caused the constitutional deprivation. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Manzi fails to point to any policy or practice of Wexford's that caused Manzi to lose access to his previously prescribed medications. Thus, any claim against Wexford is **DISMISSED without prejudice**.

### Discussion

Based on the allegations in the Amended Complaint, the Court designates the following counts:

Count 1: **Eighth Amendment deliberate indifference to medical needs claim against Dr. Yuan for discontinuing Manzi's prescribed psychiatric medications and providing him with a medication that caused his mental health to deteriorate.**

Count 2: **Eighth Amendment deliberate indifference to medical needs claim against Nurse Practitioner Hoke, Gay, Helregel, Kennedy, Musgrave, and Warden Jennings for failing to help Manzi's mental health.**

Count 3: **Eighth Amendment failure to intervene claim against C/O Alspach, Warden Chad Jennings, and Latoya Hughes for failing to protect Manzi from an inmate assault.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

### Severance of Count 1

Manzi alleges three distinct claims. As a result, the Court must determine whether the claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Federal Rules of Civil Procedure 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

law or fact common to all. *George*, 507 F.3d at 607. Rule 21 grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The main focus of Manzi's amended pleading is his current access to his mental health medications and threats to his safety at Robinson Correctional Center. Although the allegations in Count 1 also allege deliberate indifference in the treatment of his mental health, the allegations took place while he was housed at Lincoln Correctional Center prior to his release on parole. It also involves a different provider, Dr. Yuan. The Court finds this claim is unrelated to his claim regarding his care at Robinson. Thus, consistent with *George* and Federal Rules of Civil Procedure 20 and 21, the Court will sever the potential claim that occurred at Lincoln into a new lawsuit.

Venue for federal civil rights actions brought under 42 U.S.C. § 1983 is governed by 28 U.S.C. § 1391(b) under which such actions may be brought only in (1) the judicial district where any defendant resides (if all defendants reside in the same State), (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to the court's personal jurisdiction with respect to the action, if there is no district in which the action may otherwise be brought. Because a substantial part of the events or omissions giving rise to Manzi's claim in Count 1 took place while he was housed at Lincoln Correctional Center in Logan County, the appropriate forum for the adjudication of those claims is the federal judicial district for the Central District of Illinois. 28 U.S.C. § 93(b). Thus, the Court **SEVERS** Manzi's claim in Count 1 and **TRANSFERS** the newly opened case to the Central District of Illinois as set forth below.

**Merits of Remaining Claims**

**Count 2**

As to the remaining claims in this case, Manzi again fails to state a claim in Count 2 for the treatment of his mental health condition. To successfully state an Eighth Amendment claim of deliberate indifference to medical needs, a plaintiff must plead that he suffered from "an objectively serious medical condition" and that a "state official was deliberately… indifferent" to that condition. *See Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019). A plaintiff must demonstrate that the defendant's actions were more than negligent, something approaching intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). "[A] prisoner must demonstrate that the medical professional's response was so inadequate that it demonstrated an absence of professional judgment." *Jackson v. Esser*, 105 F.4th 948, 961–62 (7th Cir. 2024) (quotations omitted). He must demonstrate that "no minimally competent professional" would have acted the way the defendant acted. *Id.* at 962.

A plaintiff must also allege that each defendant was aware of his need for care and personally involved in the constitutional deprivation. The relevant inquiry is whether defendants "actually knew about the plaintiff's condition, not whether a reasonable official should have known." *See Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999). *See also Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("[l]iability depends on each defendant's knowledge and actions").

Here, Manzi alleges that wants to be prescribed Seroquel because he believes that it is the only medication that adequately treats his condition. He believes that other medications prescribed by the mental health providers at Robinson fail to alleviate his manic episodes.

7

But an inmate "is not entitled to demand specific care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Nor does the mere disagreement in the course of treatment constitute deliberate indifference. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). The allegations presented by Manzi suggest that the mental health and medical providers are providing treatment for his mental health. He acknowledges that Nurse Practitioner Hoke showed him the entire list of medications to help determine a proper treatment and that Ms. Kennedy spoke to him about his mental health and provided him access to group meetings. Manzi acknowledges he is on his third different medication as the first two caused side-effects. Nothing in the allegations suggest that these providers acted with deliberate indifference. They provided him with treatment and continued to prescribe medications to find one that properly treats his condition. Although it is not the medication that Manzi wants, the decision not to prescribe Seroquel at this time is not "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021) (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)).

Manzi also identifies other providers and prison officials that he "begged for help," but he fails to allege when he spoke to these officials, what they knew about his mental health status, and their response, if any. As previously stated, the allegations suggest that Manzi is receiving treatment for his mental health. The allegations, as presented, fail to state a viable claim for deliberate indifference against any defendant. Thus, Count 2 is **DISMISSED without prejudice**.

**Count 3**

Manzi adequately states a claim in Count 3 against C/O Alspach. He alleges that Alspach was aware of the attack on Manzi by another inmate but failed to intervene. He did not approach Manzi until after the assault concluded and Manzi was injured. To state an Eighth Amendment failure to protect claim, a prisoner must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) defendants "acted with deliberate indifference to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). At this early stage, Manzi states a claim against Alspach.

Manzi, however, fails to state a claim against Chad Jennings and Latoya Hughes. Although he alleges that he spoke to the warden and wrote to Hughes about current threats he faces at Robinson, he fails to indicate the nature or the source of those threats. He acknowledges that the inmate who assaulted him was transferred to another prison (Doc. 15, p. 8). He merely states that he is now a sitting duck because he believes inmates in his current housing unit think he is a snitch. But he fails to offer any facts regarding those threats, nor has he alleged that he informed Jennings and Hughes of any specific threat to his safety. Thus, Count 3 is dismissed as to Chad Jennings and Latoya Hughes.

### Disposition

For the reasons stated above, the claim against Dr. Yuan is **SEVERED** into a new case. The Clerk of Court is **DIRECTED** to file the following documents in the new case:

- This Memorandum and Order;
- The Amended Complaint (Doc. 15); and

9

- Manzi's motion for leave to proceed *in forma pauperis* (Doc. 4).

Once the Clerk of Court has opened the new case against Dr. Yuan, **IT IS ORDERED** that, pursuant to 28 U.S.C. §§ 1391(b) and 1404(a) and on the Court's own motion, the new action be **TRANSFERRED** to the United States District Court for the Central District of Illinois.

As to the remaining claims in this case, Count 2 is **DISMISSED without prejudice**. Count 3 shall proceed against C/O Alspach. All other defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for C/O Alspach: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to defendant's place of employment as identified by Manzi. If defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on defendant, and the Court will require defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If defendant can no longer be found at the work address provided by Manzi, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Manzi, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Manzi is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 24, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**